IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SCOTT DAY, individually and on behalf
of all others similarly situated; and GLENDA
WILSON, individually and on behalf of
all others similarly situated                                               PLAINTIFFS

v.                                          Case No. 2:13-CV-02164

WHIRLPOOL CORPORATION                                                        DEFENDANT

<u>**OPINION AND ORDER**</u>

Currently before the Court are the joint motions of Plaintiffs Scott Day and Glenda Wilson and Defendant Whirlpool Corporation ("Whirlpool") to certify a class action and grant preliminary approval to a class settlement agreement (Docs. 33, 44). The movants filed briefs in support (Docs. 34, 45) and a hearing was held on the motion (Doc. 52). An appearance was entered by counsel for putative class members ("objectors")[1] who filed objections to the motions for certification and for settlement (Docs. 37, 46). Whirlpool filed a response to the objections (Doc. 49). The objectors filed supplemental objections (Doc. 53), and Whirlpool again filed a response (Doc. 54). The Court has considered the issues before it, and for the reasons stated herein, the joint motions (Docs. 33, 44) will be denied at this time.

**I.      Background**[2]

For 45 years Whirlpool owned and operated an appliance manufacturing facility at 6400

---

[1] The objectors are the plaintiffs in separate actions against Whirlpool, case numbers 2:13-CV-02227 and 2:13-CV-02228.

[2] Although no discovery has occurred in this case, movants have agreed upon certain facts only for the purposes of settlement. Many of the background facts are drawn from the Remedial Action Decision Document ("RADD") attached as Exhibit 1 to the motions for certification and settlement. Others come from representations by the parties or other documents on the record. The facts are considered for purposes of certification only, and the Court does not make any findings or decisions about the actual merits of the instant case.

1

Jenny Lind Road, on the south side of Fort Smith, Arkansas.  Operations ceased in June of 2012.
From approximately 1967 to 1981, Whirlpool used the chemical trichloroethylene ("TCE") as a
degreaser at the facility.  Exposure to TCE can be toxic to humans.  The use of TCE appears to
have been discontinued at some point in the mid-1980s, and Whirlpool reported its use of TCE at
the facility to the Arkansas Department of Environmental Quality's ("ADEQ") precursor agency
in 1983.  In the late 1980s, while removing an underground storage tank at the facility,
Whirlpool discovered the presence of elevated concentrations of TCE in the soil and shallow
groundwater.  Whirlpool worked with ADEQ to develop a plan to further investigate this TCE
plume, and in 2002 agreed to investigate and remediate impacted groundwater at the northern
portion of its facility.  Around that same time, Whirlpool determined that the TCE plume
extended to the north of its facility.  Subsequent investigations have revealed that the TCE plume
extends under multiple properties north of Whirlpool's facility.

In March of 2013, a proposed ordinance came before the Fort Smith Board of Directors
with the purpose of regulating groundwater in the area north of the Whirlpool facility.  The vote
failed.  There is nothing before the Court to indicate that property owners affected by the TCE
plume were made aware of the plume's existence prior to this point.  In May of 2013, the
Sebastian County Assessor reduced the tax value of multiple properties north of the Whirlpool
facility in ranges varying from 25% to 75% of the prior market value assessment.  Some of the
properties are located atop the TCE plume, while others are proximate to it.  Plaintiff Day filed
this lawsuit on May 20, 2013, in the Sebastian County Circuit Court, alleging trespass, nuisance,
negligence, a violation of the Arkansas Deceptive Trade Practice Act, a violation of the Arkansas
Solid Waste Management Act, and fraudulent concealment.  Whirlpool removed to this Court
and filed its answer in June of 2013.  At about 5:00 p.m. on July 2, 2014, Plaintiff Day filed an

amended complaint, joined by Plaintiff Wilson.  The next day, at about 12:30 p.m., the parties filed the instant joint motion to certify and preliminarily approve class settlement.

The motion to certify divides the proposed class described in the amended complaint into two putative subclasses—a well-ban subclass and a fringe subclass.  (Docs. 34, p. 6; 45-3, p. 4).[3] The putative well-ban subclass comprises property owners who own properties in an area bounded to the south by Ingersoll Avenue (which runs along the north side of the Whirlpool facility); to the east by Jenny Lind Road; to the north by Brazil Avenue; and to the west by Ferguson Street, with an imaginary line extending Ferguson Street south to Ingersoll Avenue. This area includes properties beneath which movants represent the TCE plume has spread, as well as properties merely proximate to the TCE plume but neatly identifiable by their location on the same block.  (Doc. 45-1, p. 38).  The putative fringe subclass comprises properties that directly border the well-ban subclass properties.  (Doc. 45-3, p. 4).  Ownership of properties in either putative subclass is a requirement for membership in the proposed class action, and properties the movants believe are affected are identified by addresses in exhibits to the proposed settlement agreement.  (Doc. 45-3, pp. 26–31).  The proposed settlement would grant affected property owners an award based in part on diminution in value of their property in exchange for an access agreement, a deed restriction on groundwater use, and a claims release waiving all claims related to groundwater chemicals from the Whirlpool facility (except for personal injury and wrongful death claims).  The Court held a hearing on the motion on October 6, 2014.

## II.    Certification

The procedure for certifying a class action lawsuit is found in Federal Rule of Civil Procedure 23.  On a motion for class certification, the movant has the burden of affirmatively

---

[3] All citations to specific page numbers use the CM/ECF page numbers from the electronic docket in this case.

demonstrating that the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, --U.S.--, 131 S.Ct. 2541, 2551 (2011). When class certification is sought for settlement purposes the Court's heightened attention is required. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In conducting its rigorous analysis of certification issues, the Court may "probe behind the pleadings," and that analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 131 S.Ct. at 2551 (internal quotations omitted).

Before a class can be certified under Rule 23, the movant must demonstrate that the class representative is a member of the class and that:

(1)    the class is so numerous that joinder of all members is impracticable;
(2)    there are questions of law or fact common to the class;
(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The prerequisites in these four subsections are commonly referred to as the requirements of "numerosity, commonality, typicality, and adequate representation." *Dukes*, 131 S.Ct. at 2550. Where subclasses are necessary to maintain a class action, "[t]he requirements must be satisfied as to each subclass." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982).

A class that meets these four requirements may proceed with its action if it also qualifies as one of the types of actions that may be maintained under Rule 23(b). The parties here seek certification under Rule 23(b)(3). An action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule

provides a nonexclusive list of matters pertinent to these findings:

> (A)    the class members' interest in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)    the likely difficulties in managing a class action.

*Id*. The last of these factors need not be considered when class certification is sought for settlement purposes. *Amchem Prods., Inc.*, 521 U.S. at 620. In all other respects, Rule 23's requirements must be met even by a settlement class. *Id*. When a court certifies a class, it must appoint class counsel after conducting an analysis to determine whether appointed class counsel will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g).

The Court's following analysis of the Rule 23(a) requirements is limited to those requirements which movants have not affirmatively demonstrated are met—numerosity and adequate representation. The Court also has some concerns regarding other aspects of the motion to certify and preliminarily approve settlement, but because the Rule 23(a) requirements are not met, the Court need not analyze those other issues in depth.

### A.    Numerosity

To satisfy the numerosity requirement, the movants must show that the putative subclass members are so numerous that joinder would be impracticable. The parties state in their joint brief that they have met the requirement of numerosity. They devote minimal argument to the issue and fail to explain why joinder would be impracticable in this case, but instead rely on the legal conclusion that "no specific number is needed to maintain a class action." (Doc. 45, p. 17). The number of putative subclass members required before joinder is impracticable depends on the circumstances of any given case. *Ark. Educ. Ass'n v. Bd. of Educ.*, 446 F.2d 763, 765 (8th

Cir. 1971) (finding numerosity satisfied with 20 class members where individual discrimination actions over salary scales were less likely to be pursued by class members who were still employed by the school and who were currently compensated at a nondiscriminatory rate). Courts in this circuit frequently presume that joinder would be impracticable when a putative class has at least 40 members. *See Hammer v. JP's Sw. Foods, L.L.C.*, 267 F.R.D. 284, 287 (W.D. Mo. 2010); *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 409 (D. Minn. 2007); *Caroline C. by and through Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996).

The joint brief identifies a total of 104 properties as impacted by TCE contamination. It does not, however, provide the number of property *owners* in each putative subclass. Movants must demonstrate that each subclass independently meets the numerosity requirement. By relying on the number of properties rather than a good faith estimate of the number of putative subclass members, movants have not met their burden to affirmatively demonstrate numerosity. When the Court raised its concerns about numerosity, the parties' oral argument focused on the number of properties and minimized the importance of or assumed numerosity of subclass members. (Doc. 52, pp. 5:21–6:13, 61:19–62:4, 86:17–87:4). Even focusing only on the properties owned by members of each putative subclass raises questions of numerosity, however. The movants have graphically represented the approximate location of the TCE plume. (Doc. 45-1, p. 38). It appears that the TCE plume might not actually lie under a number of properties currently used to define the putative well-ban subclass. The Court has some question about whether all members of the putative well-ban subclass meet the requirement of commonality, or whether those well-ban subclass members who own property that does not actually sit over the TCE plume should instead be included within the fringe subclass. This is not to say that the requirement of commonality would not be met in this case for each putative subclass. If

6

properties used to identify members of the putative well-ban subclass should instead be used to identify them as members of the putative fringe subclass, however, then the number of owners who should be within the putative well-ban subclass will almost certainly be fewer than those now included.

Even assuming there are more than 40 members each in the putative subclasses, which may be the case with 104 properties at issue, it is not clear that joinder of putative subclass members would be impracticable. Geographic proximity and the ease of identifying parties are both considerations when determining whether numerosity has been established. *See Jaynes v. United States*, 69 Fed. Cl. 450, 455 (Fed. Cl. 2006) ("Where, as here, the class members are both geographically proximate and easily identified and located . . . , joinder is more likely practicable even in light of a large class population."); *Hum v. Dericks*, 162 F.R.D. 628, 634 (D. Haw. 1995) ("Joinder is generally considered more practicable when all members of the class are from the same geographic area. Where class members may be easily identified, joinder is also more practicable." (citations omitted)). In this case, the movants could easily ascertain probable subclass membership by reviewing official property records. It is likely that the putative subclass members are nearly as geographically proximate as the properties they own, with most owners residing in or around Fort Smith. Because it is not clear that joinder would be impracticable, whatever presumption of impracticability might exist based on the number of properties is rebutted.

This matter is further complicated by the objectors, whose counsel has entered his appearance this case. Counsel for the objectors represents that most, if not all, of the objectors will opt out if the Court certifies these subclasses. Usually the "speculative possibility [that enough class members will opt out that numerosity is no longer met] will not bar a class at the

certification stage." Newberg on Class Actions § 17:9 (4th ed.).  In light of the fact that many of these objectors are already involved in separate litigation pending in this forum, however, the Court considers this possibility more than speculative.  The objectors likely constitute a significant percentage of the membership of both putative subclasses.  It would be a considerable waste of the parties' resources and the Court's resources to certify this class action, only to have to reexamine the issue of certification once the opt-outs roll in.[4]  Furthermore, the objectors have thus far used joinder without resultant impracticability in their own lawsuits, undermining any presumption that joinder in this lawsuit would be impracticable.  For all of these reasons, the Court finds that the movants have not met their burden of affirmatively demonstrating the numerosity requirement for each putative subclass.  Accordingly, a class action cannot be certified under Rule 23.

## B.    Adequate Representation

A class cannot be certified unless the Court finds that the named plaintiffs will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Additionally, for a class representative to be adequate, he must be a member of the class he seeks to represent.  *Bishop v. Comm. on Prof'l Ethics and Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1289 (8th Cir. 1982).[5]  Subsection (a)(4) asks "whether (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously

---

[4] The potential for wasted resources is driven home by Whirlpool's reservation of rights in the proposed settlement agreement, under which it could cancel the settlement if 25% or more of the putative class members opt out.

[5] Courts address the explicit prefatory requirement of Rule 23(a) that the party suing or being sued as a class representative be a member of a class in a number of different ways.  *See* Newberg on Class Actions §§ 3:8–3:10 (5th ed.).  In the Eighth Circuit, this requirement has been addressed in the 23(a)(4) inquiry.  *Bishop*, 686 F.2d at 1289 ("It is fundamental in order to meet the Rule 23(a)(4) adequate representation prerequisite that at the time the class is certified a class representative must be a part of the class and possess the same interest and suffer the same injury as the class members." (quotations omitted)).

prosecute the interests of the class . . . ." *Paxton*, 688 F.2d at 562–63.[6]  This analysis also "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc.*, 521 U.S. at 625.  The Court should examine whether satisfaction of the representatives' interests will be at the expense of the class or will be antagonistic to the class's interests.  *Paxton*, 688 F.2d at 563.

Movants have failed to affirmatively demonstrate that either Day or Wilson satisfies the requirement of adequate representation.  As an initial matter, the Court notes that Day alleges he owns property that would place him in the fringe subclass, and the joint motion claims that he owns and resides at 5920 Ferguson Road.  (Doc. 44, p. 3).  However, Exhibit B to the proposed settlement agreement indicates that property is owned by "River Rock."  (Doc. 45-3, p. 31).  At oral argument, this issue was treated as a matter of real party in interest that could easily be corrected.  (Doc. 52, pp. 13:15–15:14, 63:22–64:13).  In particular, putative class counsel explained that his understanding of the Rules is that "if and when someone raises the issue of whether or not someone is a real party in interest, then it can be corrected with leave of Court." (Doc. 52, pp. 14:23–15:1).  It is well settled, however, that the burden is on the movant to affirmatively demonstrate the Rule 23(a) prerequisites are met.  A representative who is not a property owner at the time of class certification is not a member of the class when property ownership is foundational to the class definition.  On this ground alone the parties have not met their burden to affirmatively demonstrate that Day is an adequate representative of the putative fringe subclass, making certification of that subclass improper at this point.[7]

_____

[6] This inquiry once included analysis of the adequacy of class counsel, but that analysis is now conducted under Rule 23(g).

[7] The Court notes that it is currently considering a motion for leave to file a second amended complaint (Doc. 55) that would substitute River Rock Holdings, LLC for Day. However, because the briefing and argument on the instant motions address Day's adequacy as

Apart from that issue, however, the Plaintiffs have not affirmatively demonstrated that they have common interests with the members of the putative subclasses, or that Plaintiffs will vigorously prosecute the interests of the putative subclasses, as is required by subsection (a)(4). It also appears that satisfaction of the Plaintiffs' interests may be at the expense of putative subclass members.

Plaintiffs in this case allege that they are owners and residents of properties affected by Whirlpool's TCE plume. Although there are other owner/residents in the putative subclasses, it also includes nonresident owners, landlords, and organizations among its membership. A landlord or organization that does not reside on its property is likely to have a qualitatively different interest in resolution of a property damage claim involving that property.[8] The Court is concerned that Plaintiffs might not share interests with—or at least might not vigorously pursue the interests of—putative subclass members who are not resident/owners, and the movants have not affirmatively demonstrated otherwise.

Looking beyond the pleadings, there are other reasons for concern that Plaintiffs will not be adequate representatives for the subclasses. Plaintiffs have not demonstrated thus far that they will vigorously prosecute the interests of putative class members. After having explained his concerns to Mr. Shemin, Day agreed to begin this lawsuit with an attorney whose goal from the beginning was to compromise for less than the damages he believes are available, even though that attorney also assumed that liability for the TCE plume would not be hotly contested.[9]

---

class representative, the adequacy of River Rock Holdings, LLC need not be addressed unless the Court allows the amended complaint and a later motion to certify is filed.

[8] For example, if this sort of putative class member had decided to settle, it seems likely that the issue of indemnification for claims from third parties would have been explicitly addressed. Yet the movants do not appear to have considered this issue prior to oral argument. (Doc. 52, pp. 59:18–61:1).

[9] In fact, counsel for Whirlpool essentially conceded liability at oral argument. (Doc. 52,

(Doc. 52, pp. 6:14–7:12, 8:18–8:24, 17:16–23, 25:6–25:17).   While there is no question that settlement is viewed as a favored outcome, when a plaintiff begins a lawsuit with the desire to negotiate settlement rather than the desire to be "made whole," and does not even press his attorney to conduct discovery to determine the likelihood of victory on the merits or to give some context to the terms of the settlement offer, the Court is concerned that such a plaintiff will not vigorously prosecute the interests of a class.

The Court's concern extends to the other Plaintiff in this action.   Wilson joined the lawsuit the day before putative class counsel moved for settlement.   Based on the representations of counsel at the hearing, it appears Wilson was added so that the settlement could bind more people than just the original Plaintiff, Day, and the other members of the putative fringe subclass. Mr. Shemin, for Plaintiffs, explained that Wilson was added because a member of the well-ban subclass was necessary for certification.   (Doc. 52, p. 11:11–20).   Mr. Brunson, for Whirlpool, explained that Wilson was added, apparently at Whirlpool's behest, as a result of extensive settlement discussions and because Whirlpool wanted to ensure settlement could reach the putative well-ban subclass.   (Doc. 52, pp. 64:14–18, 65:4–11).   That Wilson became a Plaintiff and putative subclass representative at the eleventh hour at Whirlpool's behest does not in and of itself render her inadequate as a subclass representative.   It does, however, raise a significant question about the extent to which she would vigorously prosecute the interests of the subclass.

Notwithstanding counsel for Whirlpool's observation at the hearing that "this is an extremely generous settlement," the Court also has some concern that the proposed settlement terms undermine any assertion that the proposed representatives have vigorously prosecuted or will vigorously prosecute this action.   Plaintiffs have negotiated a settlement that essentially

---

p. 44:18–20 ("I mean, we did it.  We want to fix it.  It wasn't on purpose.  It was an accident.")).

gives each putative subclass the same remedy—money to compensate for diminution in property value.  On the pleadings, however, each putative subclass seems likely to differ on the issue of appropriate remedy,[10] and the movants have not affirmatively demonstrated "that the named plaintiffs operated under a proper understanding of their representational responsibilities [to represent solely the members of their respective groups]."  *Amchem Prods., Inc.*, 521 U.S. at 627 (referring to *In re Joint E. and S. Dist. Asbestos Litig.,* 982 F.2d 721, 742–743 (1992), modified on reh'g *sub nom. In re Findley,* 993 F.2d 7 (1993)).[11]

Further examination of the proposed settlement agreement only exacerbates the Court's concerns about vigorous prosecution and common interests.  No significant effort has been put into litigating or conducting discovery on the merits.  (Doc. 52, pp. 24:23–25:1 ("THE COURT: Has discovery even commenced?  MR. SHEMIN: No, but I know --  THE COURT: You haven't done any discovery at all?  MR. SHEMIN: I haven't.  I don't need, Judge -- .")).  It seems the parties have only engaged in settlement negotiations.  The product of those settlement negotiations includes a clause under which all parties represent their intent to ask that the Court give an "incentive payment," paid directly by Whirlpool, to the class representatives to compensate them for their "efforts in representing the Class."  (Doc. 45-3, p. 16).  Although such clauses are often standard in settlement agreements in truly adversarial proceedings, the instant case has been one of negotiation rather than litigation, and the incentive clause raises questions about vigorous prosecution.  To the Court, the clause appears to put the Plaintiffs at odds with

---

[10] In particular, a member of the fringe subclass is likely to desire the most effective method of remediating the TCE plume, regardless of how invasive that method might be to well-ban properties, and will have a lesser interest in damages (since the amount he or she would be entitled to is questionable).  A well-ban subclass member, on the other hand, will likely desire the least invasive method of effective remediation and will have a greater interest in damages since the TCE plume is actually present beneath his or her property.

[11] It is also not clear that Wilson and Day could obtain this understanding when they have been represented by the same counsel.

the putative subclasses because it offers the Plaintiffs an award for deciding not to even begin pursuing their representative claims on behalf of the putative subclasses.

After considering all of the circumstances, the Court finds that significant questions remain about whether the Plaintiffs will vigorously prosecute this action on behalf of the putative subclasses.  To some extent, the record in this case even raises a question about whether it is Plaintiffs or Whirlpool driving the class action.   The movants have not affirmatively demonstrated that either Day or Wilson will fairly and adequately protect the interests of their respective subclasses.  Accordingly, a class action cannot be certified under Rule 23.

### C.    Additional Concerns

Because the movants have failed to affirmatively demonstrate that the Rule 23(a) requirements are met, no further analysis of the issues raised by this motion is required. However, because the movants addressed numerous other issues in their briefs and at the hearing, and because the Court presumes the complaint will be amended and a renewed motion for certification will ultimately be filed in this case, the Court will briefly address additional areas of concern in the interests of judicial efficiency.

### 1.    Rule 23(b)(3) Predominance and Superiority

In addition to the Rule 23(a) prerequisites, movants "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."   *Comcast Corp. v. Behrend*, --U.S.--, 133 S.Ct. 1426, 1432 (2013).  Under Rule 23(b)(3), this evidentiary proof must show that the common issues predominate over individual issues, and that a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).  "To determine whether common issues predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings."  *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  Where, as here,

there has not been any merits discovery, "the court must necessarily conduct this preliminary inquiry prospectively." *Id*. at 567.  The Court should also consider the factors laid out in Rule 23(b)(3).[12]  "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp.*, 133 S.Ct. at 1432.  One area that the Supreme Court has highlighted for particular examination under Rule 23(b)(3) is movants' damages model.  *Id*. at 1432–33.

The Court is unconvinced that the movants have met their Rule 23(b)(3) burdens.  The Rule 23(a) common issue addressed by the joint motions is whether the trespass of Whirlpool's TCE plume caused diminution of class members' property values.  Even if the issue as the movants have cabined it for settlement were the only common issue, it is unclear that that issue would predominate over individual issues here.  The necessity of the Court's heightened attention where certification is sought for settlement purposes and no discovery has been conducted compels a more thorough examination of this issue than the movants have given it.

The Court notes that the nuisance claims likely would rely heavily on facts unique to each property owner, as Whirlpool's conduct can only be found to be unreasonable interference in light of a particular property owner's use and enjoyment of a particular property.  *Milligan v. Gen. Oil Co., Inc.*, 738 S.W.2d 404, 405 (Ark. 1987) ("Nuisance is defined as conduct by one landowner which unreasonably interferes with the use and enjoyment of the lands of another and includes conduct on property which disturbs the peaceful, quiet, and undisturbed use and enjoyment of nearby property." (quotation omitted)).  On the issue of the damages model, the extent of TCE trespass under any individual property, though dependent on the common fact issue of the trespass itself, seems to be a predominately individual issue because, where property

---

[12] As previously noted, because the parties are moving for certification in order to settle, the Court can place much less emphasis on any likely difficulties in managing a class action.

is characterized by personal use and an injury to that property is temporary, each property owner might be entitled to the cost of remediation of his own property (even beyond any remediation ordered by ADEQ to bring the TCE plume to acceptable levels). *Felton Oil Co., L.L.C. v. Gee*, 182 S.W.3d 72, (Ark. 2004). If the proposed settlement does not go through, determining the amount of money and the actions necessary to remediate each individual property seems likely to rely heavily on facts that would need to be established on an individual basis. Whatever monitoring and remediation ADEQ requires Whirlpool to conduct is also likely to impact only certain putative class members, rather than to be common to the class. Finally, as the Court has noted, the common issue of liability does not appear to be much in dispute, so much of the focus of this action (whether the next step post-certification were settlement or continued litigation) would likely be on these individual issues.

Turning to superiority, there is little question that joint action of some kind would in many respects be superior to other methods of adjudication, but the Rule 23(b)(3) analysis focuses on whether that joint action should be a class action lawsuit. Class action would include those property owners who might otherwise be left out of any resolution, which is an important outcome of this overall situation. (Doc. 52, pp. 41:18–21). Common issues could be resolved once without the need for multiple proceedings,[13] and a solution could be put in place more quickly. The TCE plume, being suspended in groundwater, does not neatly obey the area's grid-like property lines, and some possibility of migration remains. (Doc. 52, p. 58:6–59:1). The most efficient resolution—be it remediation or monetary compensation—is likely one that solves this problem area-wide and all at once, rather than in piecemeal fashion. A class action lawsuit would allow the movants and the Court to address these issues, and might not leave out unjoined

---

[13] Although this same benefit is shared with an action where plaintiffs proceed via joinder.

property owners.

While a class action could be a superior method of resolution, it is not clear that it *is* a superior method.  The Court has already noted that the objectors are proceeding in their separate actions via joinder, so other forms of joint action may be just as effective as a class action, and putative class members have some interest in individually controlling these separate actions.  Under the proposed settlement, it remains a possibility that those unjoined property owners who would be left out of any resolution might still be left out due to the proposed claims process.[14]  Finally, because the actual resolution of common issues is likely to include a larger individual component than movants represent, and because those issues that are entirely individual must also be resolved, the Court is presently unconvinced that a class action is superior.  It is possible that modification of the subclasses or certified issues might address this shortcoming, but because the movants have not satisfied their evidentiary burden to show that certification under Rule 23(b)(3) is appropriate, the motion to certify would be denied even if movants had affirmatively demonstrated that the Rule 23(a) prerequisites were met.

### 2. Notice to the Class

If the Court were to certify a Rule 23(b)(3) class, that class must receive the best notice practicable under the circumstances of:

---

[14] The proposed settlement includes what is in essence a reversionary fund.  Under the proposed settlement, Whirlpool only pays property owners who satisfactorily complete the claims process.  Although Whirlpool does not pay some specified amount to a general settlement fund against which specific claims are made, only to be refunded any unclaimed portion, the effect is the same as if this were a paradigmatic reversionary fund.  It is the Court's experience that, even where a settlement amount is substantial enough that it should be expected to get a class member's attention, such a failure to claim funds almost always occurs to a significant extent.  So whereas a class action in general might prevent affected property owners from being left behind, the class action proposed here, along with the terms of the proposed settlement, provides no strong assurance that all putative class members will receive compensation from Whirlpool.

16

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Court observes that the proposed notice is likely inadequate under Rule 23(c)(2)(B). The proposed notice appears to follow the format provided by the Federal Judicial Center ("FJC").[15]  While the notice relays the names the movants have given to the putative subclasses and provides some information—in particular, the addresses of affected properties—that would help a recipient determine whether he might be in a particular subclass, the movants' notice departs from the FJC examples in that it does not clearly and concisely define the class in plain language as required by Rule 23(c)(2)(B)(ii).  Were this court viewing the notice retrospectively, it might find such an oversight harmless.  In this case however, notice has not issued, and the Court believes that if it later certifies a class action, requiring the movants to provide a definition of the class and subclasses would be reasonable under the circumstances of this case.

More significantly, the Court observes that the proposed notice likely does not meet the requirements of Rule 23(c)(2)(B)(iii).  Perhaps because the movants seek certification for settlement purposes, the proposed notice only explains that an action was filed "involving the contamination of land resulting from" Whirlpool's TCE plume, and states in conclusory fashion that the class members are entitled to the amount of settlement.  (Doc. 45-3, pp. 41, 52).  The

---

[15] Forms and other class action notice guidance can be obtained from http://www.fjc.gov/ by navigating to the "Class Action Notices Page" link on the left-hand side of the webpage.

Court believes that this notice does not reasonably inform class members of the class claims, issues, or defenses, in large part because it does not state most of them (in clear and concise plain language or otherwise), and does not adequately inform them of their potential remedies.

### 3.    Settlement

Although the Court has some concerns about the fairness, reasonableness, and adequacy of the proposed class settlement agreement, because no class action is certified, no class action can be settled.   Accordingly, the proposed settlement need not be analyzed at this time. Furthermore, in light of the Court's concerns about certification, it is at least possible that any settlement agreement proposed on a renewed motion will be significantly different.   Should the parties seek certification again in the near future, then if a class is certifiable, the Court will devote more attention to any settlement agreement proposed after certification.

## IV.    Conclusion

IT IS THEREFORE ORDERED that the joint motion (Doc. 33) and amended joint motion (Doc. 44) for class certification and preliminary approval of a class settlement are DENIED for the reasons state herein.  The parties are given leave to refile at a later time.

IT IS SO ORDERED this 3rd day of December, 2014.

/s/ P. K. Holmes, III

P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE

18